Good morning, Your Honors. May it please the Court, my name is Brian Black on behalf of Appellant Civil Beat Law Center for the Public Interest. I'd like to reserve three minutes for rebuttal. Can you tell us, as you start, what is left of this case? Sure, Your Honor. So the CDC has suggested that the site-specific exception is moot. So there were two exceptions under the 2002 Act that were brought. Well, but more graphically, what is, in terms of what's now redacted, is it only the University of Hawaii, the location at the University of Hawaii, and the names of people and nothing else? That's correct. So the location of the University of Hawaii, the University of Hawaii's reference itself, the identity of the registered person, and the identity... Well, I must say that to an outsider it all seems a little silly, because since you know the answers to all of these things, and they know you know the answers to all of these things, so from both sides it seems like a rather airy dispute. I think to some extent, and part of it has to do with the of course, to put it back into context, this case first started, they were producing nothing under an interpretation of the law that was completely inaccurate. Okay, and let's say that's true, but they're not now. So do we get to decide what they did to begin with was wrong, and why would we? Well, as it concerns the health and safety exception, I think the court, that issue is clearly not moot. That has to do with the redaction of the University of Hawaii's identity, and the University of Hawaii staff, and those names are still redacted. We do know that what the identity is, because the CDC has conceded that these records are about the University of Hawaii, although it doesn't produce that information on the documents itself. But even then we don't get the issue of their original non-disclosure, because they did, or some of them said at the beginning, well our policy is not to produce anything, because anything is going to cause a health and safety problem, but they've left that aside. I mean, they've given it to you now. In other words, all the material about what the regulations were, and how they were violated, and so on, you have it all. Well, I, not to speak for them, but I believe their position is that they are still allowed to withhold the identity of the University of Hawaii under the health and safety exception. And in order to understand why that is wrong, this court would need to interpret the scope of that exception. And the, so that issue is not moot. But not to review their original, you know, generic exclusion, which is, I mean, their original position, at least arguably, was that they don't produce anything about anything, and now they're down to just the, the name isn't, and the location. But they did, didn't they disclose that in 2015 anyway? They did not disclose anything in response to the original request. Well, no, in response to somebody else's request. Yes, in response to someone else's request, they disclosed information that was redacted to not, that included the deficiencies, but did not include any references to the identity of the locations. So they've... It starts with, there's a 2014 news report that there was no compliance at University of Hawaii at Manoa. So that's the location, right? There, there wasn't, there's, it's not in the record other than an allegation of complaint, but there was a news article in 2014. Right, and you're saying they, the issue here is that they haven't publicly acknowledged that the actual location that's the subject of these documents is University of Hawaii at Manoa. They, they, that's correct. Under FOIA, they cannot withhold information unless it's expressly exempted, and yet they're continuing to withhold this information, claiming it, that it's a threat to health and safety under the 2002 Act exception. All right, so how, well, and your argument is it's not a threat to health and safety? Our argument is that when you look at what Congress's intent was with respect to that exception, they did not properly interpret the scope of that exception, did not consider the factors that the Congress wanted to be considered in the scope of that exception, and therefore were withholding information that was inconsistent with the, didn't submit enough information, and they were withholding information that's inconsistent. And is that primarily because, so I guess it would be helpful to have your legal argument, but is your legal argument that that's primarily because once the information is out there, it's not going to endanger public health and safety to acknowledge what's already, people already know? I, I think that's a secondary argument. I think the primary argument is that the interpretation itself is wrong. What's the, because? And that's because when you look at what Congress did with respect to the health and safety exception, it didn't impose an absolute prohibition on disclosing the identity of registered persons. Well, clearly it didn't because it has a, it has an if, if the agency. Correct. And, and so in order to understand what it meant and what it wanted to happen with, what Congress wanted to happen with respect to the health and safety exception, you look at the legislative history, and in the legislative history, the Congress explained, quote, we are striving to ensure a fair balance between public accountability and security. They wanted a case-by-case analysis, and they explained that one of the factors in the course of that analysis is whether or not the university, in this case, is publicly known to be working with select agents. That was back to what I said the first time. That was a factor, though, in the, in. What other factors are there? That's the only factor that Congress specifically identified as being. That's why I said that seemed to be the argument. But, but in this case, what happened was that the CDC ignored that factor and, in fact, refused to consider it in the course of doing their determination as to whether or not there was a health and safety risk. And the, the district court below allowed that to happen, didn't independently analyze what the scope of the exception was, and proceeded by just accepting what the CDC said with respect to there's a risk to health and safety from disclosing the inspection reports because by their very nature and purpose, there would be a threat to health and safety from the disclosure. The, the district court also erred by allowing for, again, as part of this overall analysis, allowing for a deference that's reserved for national security agencies. That, that special deference does not come just simply because the agency is claiming national security. It comes from express intent of Congress. And that, that's reserved for Exemption 1 cases, the exception clause, where Congress has imposed a broad exception on matters and, and set the criteria on matters that are outside the normal expertise of the courts. In contrast here, the health and safety exception is not the near blanket exemption that Congress, uh, imposed for the national security agencies. And it's also not something that's outside of the normal expertise of this court. It's unlike classified matters or intelligence gathering, gathering activities. And I would note that even if national security deference, which the district court used in this case, applied, the CDC's conduct on appeal has undermined the district court's decision or finding below that the agency did not engage in bad faith. The district court knew about one red flag that, that, uh, had come up in the briefing below. And that had to do with the CDC repeatedly declaring that if it disclosed any redacted information, that information would be meaningless. But when they actually did disclose redacted information, the district court held that the information, it clearly wasn't meaningless. And the district court held that it wasn't meaningless. What, what about Exemption 6 with regard to the individuals? Because that's what we have now is location and individuals, so. Yes. So, uh, Exemption 6 is only referenced by the CDC in the context of the inspectors, the CDC inspectors. They're using the health and safety exception for the UH staff. With respect to the CDC inspectors, they were performing their official statutory duties and their names should not have been redacted. The district court erred when it required that there be a cognizable need for this, for specifically for the inspector's names. This court, however, has emphasized that there's no need for showing a public interest in the specific information unless the In that first step, the nature of a non-speculative privacy interest and the likelihood of harm are balanced against the generalized public interest in disclosure. Right. So how, I mean, the problem is, of course, that we've sort of been moving along with these privacy cases. You know, even though the statute says personnel files and medical files and similar files, we seem to be applying it to public employees, public duties. In the Forrest case, and Laird was private people for the most part, as I recall. But how do you distinguish those cases, I guess? Forrest employs Laird, and I think there's one more. Go ahead. So I think that as this court, and as Your Honor, Judge Berzon noted in Yonemoto, whether or not it's private citizens versus federal employees is a relevant factor. And here, the asserted privacy interest, and I think to put in context what happened, the asserted privacy interest of the CDC inspectors is extremely narrow, because their names and contact information, including their position titles, such as inspector or microbiologist, all that's public information. So what the CDC is arguing instead is that these inspectors are going to be harassed by persons with nefarious intent, not because they deal with biotoxins on an everyday basis, since that information is public knowledge, but because they worked on a specific exception. There was no evidence that the CDC inspectors generally have ever been harassed, nor is there any evidence to explain why they would be harassed for this specific inspection at UH. The other harassment cases that this court has affirmed have dealt with either private citizens or with specific evidence that would support anticipated harassment, or both. The closest case that this... And also somewhat derogatory information, like in the Forrest employees case. Yeah, so in Forrest employees, there was also the issue with respect to disciplined employees and the disclosure of their information that was leading to their FBI agents who were merely doing their job. But in that case, their job was a highly controversial investigation of the TWA 800 crash. And the plaintiff in that case conceded that if he were given the FBI agent's names, that he was going to contact them, and given the level of attention to the case, both internationally and nationally, it was likely that there would be an investigation of the TWA 800 crash. I would like to reserve a couple of minutes for rebuttal. All right, you may proceed. May it please the Court, Anne Murphy, and I'm here for the Centers for Disease Control and Prevention. Your Honor, I would really like to address the point that this appeal is at this point silly, particularly with respect to the disclosure of the name of the registered entity. Well, for both sides, it seems a little silly, frankly. I can't say strongly enough, Your Honor, that from the agency's perspective, this case is far from trivial. At this point, given the disclosures that we ourselves have made and the agency has made mistakes, and it's not going to say that it hasn't, what the Court is being asked to order the agency to disclose is a document that lists, says it's a CDC document, lists the name and address of the registered entity, and then describes all the regulatory violations and what the agency... Which is already disclosed. That's correct. But it's not, the reason that Your Honors... They're also several years old at this point. That's correct. Can I just address the point, the agency's point, that even if people who are familiar with the case, who are familiar with FOIA, who can put all the pieces together, know what the registered entity is, there is no document out there in the world that has all of this information together on it. The agency is very clear. It's dealing with how we keep safe and secure entities like anthrax, smallpox, Ebola, ricin, things that are incredibly dangerous. And the reason that the agency has to be extremely careful in what it discloses is that, you know, obviously the dangers are very great if this stuff ever gets out. And Your Honor, I also wanted to respond that at some point it was mentioned that the agency's position is just not to disclose anything. That's actually not true. That was its original position. Only because this was the first request that the agency had ever received that specifically asked for two documents tied to a specific registered entity. I thought it was the first one that was litigated. I'm sorry, Your Honor. I thought it was the first one that was litigated. I thought that they were taking the position that this is our general position. This is the first one that's been litigated. It's the first document, it's the first request they had ever received that asked for documents about a specific entity. Ordinarily, requesters before had asked for not the names of the registered entities tied to the security and biohazard violations. But people would ask for, as in the case where we released in 2015, they would say, we just want to know what the violations are. And that's very similar, but not tied to any specific place. Obviously, the hazards involved in that are significantly less than releasing things where you say, here is the registered entity, here are the problems in the security, and basically would be disclosing a list of vulnerabilities. So what was the 512.14 letter? I'm sorry? They requested the 512.14 letter and the 512.14 inspection report. And that's what you withheld. Yes. So they're both part of the same, they're actually both part of the inspection report. There's the inspection report that says, here are the vulnerabilities in your security. Addresses University of Hawaii at Manoa. Your Honor, I'm going to call it the registered entity only because I don't want to trivialize the agency's decision that it is a bad idea to... But haven't you already revealed that elsewhere? Your Honor, what we have not done is what Congress has prohibited us by statute from doing, which is issuing the document that puts all in one place for somebody, sorry, for a person who's never heard of FOIA, never heard of this procedure, but still with the agency. If your Honor's order released, the agency has to release to the public a document that puts in one place the name of the registered entity, all of the security violations, which is obviously... Let's go to the language of the statute, okay? Yes. And the history, the language. Any portion, portion, so not all of it, portion of an evaluation or a portion of an inspection. They were talking about precisely this. Exactly. Yes, we agree. Of a specific registered person conducted under Section F that identifies the listed agent or that discloses the intention or location of the specific register if the agency determines that public disclosure of the information would endanger public health or safety. So it clearly was not contemplating a generic determination, right? But you're making a generic determination. You're saying in any instance, as I understand it, or at least I don't know why you're not saying this, there is an inspection report, a portion of which has the name of an address of the place and a person. That is a problem for public health and safety, even if the information is already otherwise known. That's your position. Yes, and... But how can that be squared with the statute? Because the agency did make the determination. Having... So just to back up to the agency's habit of it will disclose if the information is not tied to a specific register. I understand, but this is specifically talking about when it is tied to a specific location. That's correct. And the agency made a determination that even though the agency had said that it would produce these two records and that they were responsive records, which in hindsight, Your Honor, the agency probably would not do again. Well, the statute actually might require it because it says any portion of an evaluation, it certainly doesn't contemplate withholding the entire evaluation. No, but it bans the agency from disclosing the identity or location of the registered entity if it's determined that disclosure would endanger public health or safety, and the agency made that determination in the knowledge that it had produced responsive documents. But it made it on a... As you're explaining your position, it is an across-the-board generic position. It will always be the case, even if the information is public, which is what the legislative history said was the context in which it wouldn't endanger public health. But, Your Honor, it's very difficult to understand what the concept of public information is. As I say, I really want to step back at this point and say to everyone in this courtroom, maybe it does look silly because we've been bandying around the name of the registered entity. What the agency says is even though we have, through our own fault, released this to a class of people who understand FOIA, know the litigation, know that the documents were released in response to a request, there is nonetheless value in not having the agency disclose to the public the whole... You're saying it is always the case. It's certainly the case here. No, I want to know whether you're taking anything less than a generic position. If you're not, why... I think I am going to take less than a generic position simply because in this case, the agency took the position it did because the inspection report found huge vulnerabilities and dangers. And so, as the anger points out, the agency says, this is at page 159 of your excerpts of record, that this information could allow people to more easily achieve illegal access to purified strains of deadly pathogens and or concentrated biological toxins that have the potential to pose a significant threat for use as a biological weapon.  That if you know, if you have a document from the government that says, here's the name, here's the address, and here are all the problems with biosecurity and safety, that that would pose a threat to public health and safety. So, in other words, if you had a report that said, this place is great, everything's wonderful about it, then you might... That's kind of where I'm headed. I don't want to come out because I don't know quite... And civil be... You know, postulate something where everything in the report is fabulous. Are there any cases directly on point? No, Your Honor. So, you're narrowing it today to this particular investigation and review of this particular registered entity? Yes, Your Honor. But mostly because I think I'm not familiar enough with how... I can't think of a hypothetical particularly where the same issues wouldn't arise, provided that the inspection report revealed weaknesses and vulnerabilities. But actually, if it didn't reveal weaknesses, all the more so. Because now you'll know what they're doing that's good, so you'll know what to go work on. It's difficult. It will not have escaped your notice, Your Honors, that the agency wrestled mightily with this case because it had to deal with somebody asking for specific documents about a specific registered entity. So, right from the gate, it's like, do we disclose responsive documents, do we not do that? Did the CDC consider how it prepares these reports? I mean, that's... It's very difficult, and the agency wants to be able to disclose information in the aggregate, but it has really good reason to resist, and as I say, there's this federal statute, which does seem to be on point, not giving out information that's basically a roadmap to biosecurity and security vulnerabilities at specific places. Even if Congress seemed to contemplate that you had to in FOIA, Congress just got it wrong, and so you're not going to do this in order to keep our secrets safe? I don't think that's quite fair, Your Honor, because Congress specifically barred the agency from disclosing the identity of the registered entity if it had made the finding there. I mean, it left the agency to make that finding. I think all this court has to grapple with is whether that finding is valid in this case, given the other things that the agency has done, and I agree that's a completely legitimate question. We ourselves have got ourselves into a really very bad situation, and all we really want at this point is to not make things worse and not have to disclose that document that has everything on it all in one place that would be released to the public. You have a few minutes left. What about Exemption 6? Exemption 6, Your Honor, yes. I think this court's fairly recent case in Cameronesi really walks through all of the interests. It's like, is the interest de minimis? The district court here correctly found that there is a— and all the agency has to show there is that there's a potential for harassment or mistreatment. I think, again, it's kind of almost a common-sense proposition that if you are thinking about the possibilities of building a dirty bomb and biohazards and issues of really serious moment, that there is a risk that knowing the specific identities of the specific inspectors that looked at the specific facilities and know what the weaknesses are in those facilities adds another layer of danger that just having them on a phone and email list doesn't add. So that's really our position on that, and that there's really nothing to be gained. On the other side, you have to show that the requester has to show that there's a significant interest in the extra information and that the interest is likely to be advanced, and there's no significant interest in the names and addresses of the specific people who specifically inspected this registered entity. Counsel, do you agree with opposing counsel that the only matters at issue are the identity of the facility and the inspectors? Do you agree that we're limited to that at this point? I do, Your Honor. That's correct. All right. Thank you, counsel. Thank you very much. I think it helps to take into context where Congress was when it adopted the 2002 Act. So opposing counsel references Ebola, anthrax, ricin. Those are severe and serious dangers. Congress knew about those dangers. It knew what inspection reports were when it adopted this Act and it adopted these exceptions. This was immediately after the 9-11 attacks. It was immediately after the anthrax mailings. Congress knew about the threat of bioterrorism and persons with nefarious intent, which is the focus of the CDC's declarations. But it still enacted a law, not an absolute prohibition as it originally had thought immediately after 9-11, but it enacted a law that had a condition in it that required the CDC to make a determination as to health and safety, and it wanted that because there was a public accountability component for these entities, especially entities that are publicly operating with biotoxins. People know that they operate with biotoxins. There's an accountability component to know whether they are doing so safely and in the context of the CDC's regulations. I think the difficulty, and actually to go to Judge Rawlinson's point at the end, I would note that the issue of site-specific, I'm not conceding that it's moot. I still think that that issue, and as you can tell from the CDC's argument, they're arguing that this information is all prohibited from being disclosed. I thought you said the only issues that were remaining now were the identity of the facility and the inspectors. In response to Judge Berzon's question about what information was still redacted in the inspection reports, that's the information that's still redacted. But the site-specific exception and the regulatory deficiencies at issue, the interpretation of that exception and whether or not the CDC should be allowed to withhold that information in the future, and what the interpretation of that exception means, is still hotly contested between the parties. Well, yes, but you never made a patent or practice claim. And we have cases which set out what you need to allege to do that. You just haven't done it. You haven't to this day said you're going to ask for this document again. And the reason that we didn't do that was because until late last year, they were still taking the position and still had not disclosed the information. Do you want us to remit so you can file a different complaint or you just file a new case? Well, we didn't put it in the complaint. I agree that a patent or practice claim is not alleged in the complaint. But in the summary judgment motion, there was evidence presented as to the standard practice. I understand, but what there isn't is any suggestion that you want any more information. I understand that, Your Honor. And that is because we were waiting for this issue to be decided instead of just making repeated requests for the same type of information over and over again. Well, maybe you didn't do it right then. Maybe you need to start again. I don't know. Or maybe because it's just not there. It could have been, I suppose, but it's not. What about the Cameron Nessie case in terms of your Exemption 6 question? Yes. So for Exemption 6, Cameron Nessie dealt with private citizens. They were foreign students and foreign instructors that were at a U.S. military school, and these are not private citizens here. It also dealt with, as I said, evidence. All the cases before were private citizens or evidence of anticipated harassment, and there was very clear evidence of anticipated harassment because people that were in similar positions in the foreign military had had their families and themselves targeted and killed if their identities had become public. Are you essentially saying there was no privacy interest here and you don't have to go to the public interest? Or are you saying there is a public interest? What I'm saying is that you don't get to a non-trivial privacy interest because that still involves, as this court said in Yonemoto, that still involves some balancing of the public interest. It's just the more generalized public interest. What's the interest in nondisclosure? You're saying there's no interest in nondisclosure because they work for the government? The asserted interest is that they're going to be harassed by persons with nefarious intent. My position is that in the past when this court has held that that's a non-trivial privacy interest, it's involved either private citizens or there's been some evidence to show that either because of controversy or because of actual evidence of harassment. You say that the inspectors appear on a public website, essentially. How many are there who are listed? It's in the records, Your Honor. It's several pages of CDC employees who are specifically in the Division of Select Agents and Toxins. Are the inspectors separate? I had the impression from something that there were a fairly small number of these people nationally. The people who are identified with the position title inspector is less than 20. I don't know exactly how many it is. If you were to go through the list. So that's another factor here because these people, if people are looking for them, they know that these people know where these toxins are and so on and so on. So there has to be an additional privacy interest in not knowing that they were the inspectors for this particular place. Correct. That is the argument, as I understand it, is it's something specific about this inspection, but there's no evidence to show that there's anything specific to this inspection. So under the camera frenzy balancing, what's your interest in getting their names and their contact information? Our position would be that, and this court in Yonemoto was very clear that at the initial stage, we don't have to show any public interest in getting the information. But if the government shows a basis for keeping that information, for withholding that information, then what is your obligation? Then the obligation is to come forward with some public interest for this specific information. Let's assume they've advanced enough of a private interest. What's your interest? I don't think there's anything in the record with respect to it. It doesn't matter. I'm going to assume that I'm going to decide or we're going to decide, okay, for purposes of argument. What would be the public interest? I think the public interest is just the fact that these are people that are doing their job. These are the inspectors who made the specific decision with respect to this inspection and they're performing statutory duties. The question is, does it shed light on government conduct? And this information sheds light on what they were doing in their official duties. So your argument is any time information will shed light on government conduct, it must be produced regardless of any other interest of government? No, Your Honor. I think it's a balancing test. So in the end, it comes down to what is the harm and what is the specific privacy interest at issue and then balanced against what is the public interest. Your basic argument, as I understand it, is there's no non-trivial privacy interest because the only interest is that these people were doing their job and that's not a privacy interest. Yes, and there's no evidence to show that they would be harassed, which is the allegation in this case. All right. Thank you, counsel. Thank you both, counsel. Civil Pete Law Center for Public Interest versus CDC will be.
judges: Wardlaw, Berzon, Rawlinson